[No. 63143-8-I.   Division One.   March 22, 2010.]

*In the Matter of the Detention of* DAVID WRATHALL,
*Respondent.*

2

*David Wrathall*, pro se.

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *David J.W. Hackett, Deputy*, for respondent.

¶1 ELLINGTON, J. — Sexually violent predator David Wrathall appeals the revocation of his placement in a less

restrictive alternative. He contends due process requires the court to find he willfully violated the conditions of that placement before it can order revocation. Because the revocation was based upon Wrathall's failure to comply with conditions necessary to ensure public safety, we disagree and affirm the revocation.

## BACKGROUND

¶2 Wrathall has a long history of sexual offenses against male children and teenagers, including convictions for kidnapping, indecent liberties, and attempted indecent liberties. He has been diagnosed with pedophilia, attracted to males, with features of sadism and bondage; paraphilia not other otherwise specified, rape of same sex individuals; personality disorder not otherwise specified (with antisocial and schizoid features); and borderline intellectual functioning.

¶3 In 1997, Wrathall stipulated to civil commitment as a sexually violent predator (SVP). Initially, the court ordered him into total confinement at the Special Corrections Center (SCC) on McNeil Island. In 2001, the court entered an agreed order placing Wrathall into a less restrictive alternative (LRA).

¶4 Wrathall's LRA required him to reside at the Secure Community Treatment Facility (SCTF) on McNeil Island. The SCTF is operated by the Department of Social and Health Services (DSHS), and Wrathall may reside there only with permission of the DSHS secretary.[1] While living at the SCTF, Wrathall was subject to 24-hour staff supervision and electronic monitoring. He was prohibited from leaving the facility except upon prior approval and under the supervision of SCTF staff or another "approved monitoring adult," who was required to maintain visual contact with Wrathall at all times.[2] He was also required to

---

[1] RCW 71.09.250.

[2] Clerk's Papers at 170.

participate in sex offender treatment with Lang Taylor, a certified sex offender treatment provider, and to comply with all treatment conditions.

¶5 Wrathall's LRA was revoked in 2002 following incidents of noncompliance with treatment and behavioral expectations. In 2003, Wrathall regained his LRA and was allowed to return to the SCTF.

¶6 In 2008, SCC Clinical Director Carey Sturgeon and SCC's senior clinical group determined Wrathall was not making adequate treatment progress with Taylor and that Wrathall's "lackadaisical efforts at treatment raise substantial concerns for community safety and for Wrathall's treatment."[3] The State moved to modify Wrathall's conditional release order to substitute Dr. Myrna Pinedo as Wrathall's sex offender treatment provider. The court granted the State's motion.

¶7 The 2008 conditional release order contained conditions similar to the previous order, requiring Wrathall to reside at the SCTF, participate in treatment with Dr. Pinedo, and be subject to 24-hour staff and electronic monitoring with global positioning system technology. The order provided, "If Respondent is terminated from treatment with Dr. Pinedo, the Respondent shall, consistent with RCW 71.09.098 (2), immediately be taken into custody and a hearing scheduled to determine whether the Respondent's LRA will be revoked."[4]

¶8 Dr. Pinedo began treating Wrathall in May 2008. Her reports to the court indicated consistent concerns over Wrathall's treatment efforts, oppositional attitude, disturbing statements, and overall failure to progress despite having undergone years of treatment. For example, Wrathall said he dislikes being told what to do and, if unconditionally released, he would "maybe" molest a minor just because he was told not to do so. At another point, Pinedo asked Wrathall what he would do to keep the

[3] *Id.* at 338.

[4] *Id.* at 96.

community and children safe if he found himself lonely, angry, and frustrated upon unconditional release. Wrathall indicated he would try to improve his mood by consuming beer, hard alcohol, and drugs, and if that did not help, he would then "look for a kid."[5] Based in part on these comments, Pinedo reported in August 2008 that Wrathall "is not amenable to treatment at this time" and "is not currently ready to be involved in transition back into the community."[6]

¶9 Pinedo terminated Wrathall's treatment and recommended he be returned to the SCC. Due to Wrathall's lack of progress in treatment and other concerning behaviors, DSHS withdrew its permission for Wrathall to reside in the SCTF. Wrathall was thus out of compliance with the requirements of his conditional release that he be in treatment with Pinedo and reside in secure housing at the SCTF. Wrathall's community corrections officer arrested him and returned him to the SCC.

¶10 The State filed a petition to revoke Wrathall's LRA, alleging both noncompliance with LRA conditions and the need for "additional care, monitoring, supervision, or treatment."[7] After a hearing, the court revoked the LRA. Wrathall appeals.

## DISCUSSION

¶11 Wrathall contends the court violated his right to due process by revoking his conditional release for violating the terms of his LRA without first finding his violations were willful.

---

[5] Ex. 3.

[6] Ex. 5; Clerk's Papers at 136.

[7] Clerk's Papers at 116; *see* former RCW 71.09.098(1) (2006) ("Any service provider submitting reports . . . , the supervising community corrections officer, the prosecuting attorney, or the attorney general may petition the court, or the court on its own motion may schedule an immediate hearing, for the purpose of revoking or modifying the terms of the person's conditional release to a less restrictive alternative if the petitioner or the court believes the released person is not complying with the terms and conditions of his or her release or is in need of additional care, monitoring, supervision, or treatment.").

■ ¶12 The due process clause prohibits deprivation of life, liberty, or property without due process of law.[8] Thus, "[t]he threshold question in every due process challenge is whether the challenger has been deprived of a protected interest in life, liberty, or property."[9]

■ ¶13 Relying on *In re Detention of Bergen*,[10] the State contends Wrathall has no protected liberty interest in his LRA.[11] In *Bergen*, we held that "the due process clause does not create a liberty interest in a conditional release to an LRA because an SVP offender does not have a liberty interest in being released *before a court determines that the SVP is entitled to such a release*."[12] Here, a court had already determined Wrathall was entitled to conditional release and he was already enjoying the relative liberty such placement affords. Wrathall was able to socialize with friends and family in the community, attend worship services in a church of his own choosing, and pursue employment and educational opportunities in the community.

¶14 Though his liberty was significantly curtailed by numerous conditions, this conditional liberty is analogous to that enjoyed by those on parole.[13] The United States Supreme Court has long recognized that parolees are entitled to procedural due process when faced with revocation.[14] Like a parolee, an SVP on conditional release enjoys

---

[8] U.S. CONST. amend. XIV, § 1.

[9] *In re Pers. Restraint of Pullman*, 167 Wn.2d 205, 211-12, 218 P.3d 913 (2009).

[10] 146 Wn. App. 515, 195 P.3d 529 (2008).

[11] The State also contends Wrathall may not raise a due process challenge for the first time on appeal. Because Wrathall alleges a manifest error affecting a constitutional right, we address the merits of the claim. RAP 2.5(a).

[12] 146 Wn. App. at 526 (emphasis added).

[13] *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("Subject to the conditions of his parole, [the parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

[14] *Id.*

liberty that, while "indeterminate," requires at least minimal due process protections in the face of revocation.[15]

¶15 The question here is whether those due process protections require a finding of willful violation.

¶16 Our Supreme Court recently considered this question in the context of revocation of suspended sentences under the special sex offender sentencing alternative (SSOSA). In *State v. McCormick*,[16] the court revoked an offender's SSOSA after he violated the conditions of his suspended sentence by visiting a food bank located on the grounds of an elementary school. McCormick argued due process required the State to prove a willful violation of community custody conditions before revoking his suspended sentence.[17] The court rejected his claim after considering several factors, including " 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between the legislative means and purpose, [and] the existence of alternative means for effectuating the purpose.' "[18]

¶17 The court determined the State's interest in "protecting society, particularly minors, from a person convicted of raping a child" was rationally served by imposing stringent conditions and greatly outweighed the offender's interest in being punished only for willful conduct, especially given that the offender's rights are already diminished because of his conviction for a sex offense.[19] The court emphasized that requiring the State to prove a willful violation would lead to dangerous situations: "Regardless of McCormick's intent, if he frequents areas where minor children are known to congregate, he would pose a danger

[15] *Id.*

[16] 166 Wn.2d 689, 696, 213 P.3d 32 (2009).

[17] *Id.* at 697.

[18] *Id.* at 700 (alteration in original) (internal quotation marks omitted) (quoting *Bearden v. Georgia*, 461 U.S. 660, 666-67, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)).

[19] *Id.* at 702-03.

to those minors."[20] Requiring the State to prove a willful violation before revoking McCormick's SSOSA would thus endanger society by allowing him "to be repeatedly in close proximity to minors and face no punishment because he did not know minors congregated there."[21]

¶18 Wrathall argues his case is unlike *McCormick* because, unlike the offender in that case, he poses no "realistic threat to children in the community"[22] since his LRA mandates continuous monitoring and other security measures designed to make it impossible for him to reoffend. Inherent in this argument is the assumption that Wrathall could continue to reside at the SCTF if his LRA had not been revoked. But that is not the case. Before the State petitioned for revocation, DSHS had withdrawn its permission for Wrathall to live at the SCTF based upon his failure to progress in treatment and other concerning behaviors. Wrathall does not suggest there is any other housing that will provide adequate supervision.[23] Thus, the monitoring and security measures upon which Wrathall relies to prevent an offense he concedes is "otherwise-likely"[24] is no longer available.

¶19 Regardless of whether he intended to violate the conditions of his release, the reality is that Wrathall is now without treatment or secure housing. Even he acknowledges he poses a threat to the community under these circumstances. Due process requires no finding of willful

---

[20] *Id.* at 703.

[21] *Id.*

[22] Appellant's Br. at 20.

[23] RCW 71.09.092 prohibits release to an LRA absent a finding that "housing exists in Washington that is sufficiently secure to protect the community, and the person or agency providing housing to the conditionally released person has agreed in writing to accept the person, [and] to provide the level of security required by the court."

[24] Appellant's Br. at 20.

violation where the violation itself creates a threat to society.[25] Such is the case here.

¶20 Further, Wrathall ignores the second basis for the court's revocation: his need for "additional care, monitoring, supervision and treatment," which is best supplied in a secure setting.[26] Under RCW 71.09.098(1), this ground alone is sufficient for revocation.

¶21 Affirmed.

SCHINDLER, C.J., and LEACH, J., concur.

---

[25] *McCormick*, 166 Wn.2d at 703; *Bearden*, 461 U.S. at 668 n.9.

