STATE of Iowa, Appellee,

v.

**Lauren E. STARK, Appellant.**

No. 95–810.

Supreme Court of Iowa.

June 19, 1996.

James A. Schall, Storm Lake, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, and Phil Havens, County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

Defendant, Lauren E. Stark, who was acquitted of two counts of attempted murder by reason of insanity, appeals from an order that she continue to be committed to the mental health institute following an initial evaluation. The issues presented require an interpretation of Iowa Rule of Criminal Procedure 21(8). We affirm the order of the district court.

Defendant was charged with two counts of attempted murder after she slit the throats of her two minor children. Following a bench trial, the district court found that the State had proven the elements of the offenses but determined that defendant, who suffered from schizophrenia and was frequently delusional was not guilty by reason of insanity.

Under the provisions of Iowa Rule of Criminal Procedure 21(8)(b), the court was required to order defendant committed to a state mental health institute for an evaluation and a report to the court concerning the present status of her mental illness and the degree of danger that she posed to herself and others. This was done. Upon receipt of the ensuing report from the chief medical officer of the mental health institute, a hearing was scheduled pursuant to rule 21(8)(d). At that hearing, the court considered the testimony of the chief medical officer of the mental health institute as well as testimony from two other psychiatric experts.

It was the conclusion of the chief medical officer and the other two witnesses that defendant continues to suffer from schizophrenia and in all likelihood will be permanently afflicted with this disease. These three witnesses also concluded, however, that, if defendant could live in a proper environment and could be assured that a prescribed medication, Haldol, would be administered to her in strict compliance with a physician's directions, she would pose no danger to herself or others. Absent such assurance, however, the witnesses believed that defendant could

revert to a delusional and highly dangerous state. After hearing this testimony, the district court ordered, pursuant to rule 21(8)(e), that defendant continue to be committed to the mental health institute for an indefinite time. The basis for this ruling was the court's conclusion that, in applying rule 21(8)(e), it lacked authority, following defendant's release, to impose the necessary conditions to assure defendant would only be subjected to a suitable environment and that her prescribed medications would be regularly administered.

In considering defendant's contention that the court should have released her, we must first interpret rule 21(8) to determine what conditions merit release of a defendant following the initial evaluation required by subpart (b) of that rule. The language that relates to this issue is contained in subpart (e) of the rule and is conflicting in its literal portent. At the beginning of this subpart, the rule states "[i]f ... the court finds that the defendant is not mentally ill and no longer dangerous to the defendant's self or to others, the court shall order the defendant released." If this language is interpreted literally, the use of the conjunctive suggests that both a finding of no mental illness and a finding of no danger are required in order for a defendant to be released. However, later in the same subpart of the rule, it is stated that "[i]f ... the court finds that the defendant is mentally ill and dangerous to the defendant's self or to others, the court shall order the defendant committed to a state mental health institute." The literal import of this language is that the initial commitment for evaluation may not be continued unless the court finds the defendant is both mentally ill and dangerous.

■ The district court resolved this conflict by interpreting the rule to require a finding of both mental illness and danger to the defendant or others in order to continue the initial commitment. Because we are convinced that there are many varieties and degrees of mental illness for which continued commitment is not warranted, we agree with the district court's interpretation. Our conclusion in this regard is prompted in considerable part from the circumstance that the

Supreme Court has indicated that it is a violation of due process for a state to confine a harmless, mentally ill person. *Foucha v. Louisiana,* 504 U.S. 71, 77, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437, 446 (1992); *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 2493–94, 45 L.Ed.2d 396, 406–07 (1975).

■ It is clear that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 331 (1979), *quoted in Jones v. United States,* 463 U.S. 354, 360, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694, 703 (1983). The Due Process Clause "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jones,* 463 U.S. at 368, 103 S.Ct. at 3051, 77 L.Ed.2d at 708 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435, 451 (1972)). Therefore, a state must have "a constitutionally adequate purpose for the confinement." *Jones,* 463 U.S. at 361, 103 S.Ct. at 3048, 77 L.Ed.2d at 703. The purpose of commitment following an insanity acquittal like that of a civil commitment is to treat the individuals' mental illness and protect them and society from their potential dangerousness. *Jones,* 463 U.S. at 369, 103 S.Ct. at 3051–52, 77 L.Ed.2d at 708; *State v. Randall,* 192 Wis.2d 800, 532 N.W.2d 94, 102 (1995).

■ The Supreme Court has recognized that a verdict of not guilty by reason of insanity establishes two facts: (1) the defendant committed an act that constitutes a criminal offense; and (2) he committed the act because of mental illness, an illness that the defendant adequately proved in this context by a preponderance of the evidence. *Jones,* 463 U.S. at 364, 103 S.Ct. at 3049, 77 L.Ed.2d at 705; *see* Iowa Code § 701.4(1993). Although having been found beyond a reasonable doubt to have committed the criminal act, the insane person who has been found to be not guilty by reason of their mental illness has not been convicted and may not be punished. *Jones,* 463 U.S. at 370, 103 S.Ct. at 3052, 77 L.Ed.2d at 709. Any subsequent confinement must rest on a continuing illness and dangerousness. *Id.* The fact that a

person has been found, beyond a reasonable doubt, to have committed a criminal act that caused serious injury to another is some indication that that person's continued liberty could imperil the safety of others. *Lynch v. Overholser,* 369 U.S. 705, 714, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211, 218 (1962).

 The district court strongly suggested that it would favor terminating this defendant's commitment if the court had authority to impose necessary conditions for assuring the proper environment for defendant upon her release and that the requisite prescribed medications would be taken on schedule. Because the court believed it lacked authority to impose those conditions, it concluded that defendant's release would pose a definite danger to herself and others. We are persuaded that the district court does have authority to order a conditional release under rule 21(8)(e) and that the conditions that may be imposed include those envisioned by the district court in the present case as measures necessary to control defendant's mental disease. Notwithstanding our recognition that this authority exists, we are satisfied that the district court's order continuing the defendant's initial commitment was the proper disposition at the time that order was made. This conclusion rests on the absence of a satisfactory showing that it would in fact be possible to design and implement conditions that would assure that defendant lived in a satisfactory environment and would unfailingly submit to the administration of the required medications.

If the future reports to the court from the chief medical officer, as required by rule 21(8)(e), reveal the need for another hearing on this issue, a record may be developed on the feasibility and means to impose the conditions that are necessary to assure that defendant will not pose a threat to herself or others and thus provide a justification for terminating her commitment. Because the present record is inadequate to show if and how this may be done, we affirm the order continuing defendant's commitment.

**AFFIRMED.**