# IN THE SUPREME COURT OF IOWA

No. 13–2022

Filed March 13, 2015

Amended May 19, 2015

**IN RE THE DETENTION OF CALVIN MATLOCK,**

**CALVIN MATLOCK,**

Appellant.

---

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

A person committed under the Sexually Violent Predator Act alleges his release with supervision violates the Due Process Clauses of the Iowa and the United States Constitutions. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Steven L. Addington and Jill Eimermann, Assistant State Public Defenders, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer and John McCormally, Assistant Attorneys General, for appellee.

**WIGGINS, Justice.**

A person committed under the Sexually Violent Predator Act alleges his release with supervision violates the Due Process Clauses of the Iowa and the United States Constitutions. We find the statutory scheme contained in Iowa Code sections 229A.8 and 229A.9A does not violate the Due Process Clauses of the Iowa and the United States Constitutions as long as: the person continues to suffer from a mental abnormality, the testimony supports the need for supervision, and the supervision strikes the right balance between the need to protect the community and the person's liberty interest. Applying these principles to this appeal, we find the committed person still suffers from a mental abnormality and the testimony supports his release with supervision. Thus, we affirm that part of the district court's judgment. We are not satisfied the State met its burden to prove the release conditions adopted by the district court balance the need to protect the community and the person's liberty interest. Accordingly, we remand the case to the district court to review the release conditions and enter the appropriate order consistent with due process.

### I. Background Facts and Proceedings.

Calvin Matlock has three convictions for sex abuse dating back to the early 1980s. His last conviction was in 1995, and prior to his set release from prison in 2000, the State filed a petition to place Matlock in civil commitment for sexually violent predators. In July 2001, a civil jury found Matlock was a sexually violent predator as defined by Iowa Code section 229A.2(9) (2001). Following the verdict, the district court confined Matlock to the Civil Commitment Unit for Sexual Offenders (CCUSO).

Pursuant to chapter 229A, Matlock received annual evaluations regarding his treatment progress and the continued existence of a mental abnormality. Iowa Code § 229A.8(2)–(3) (2013). In 2006, the district court found Matlock met all the criteria for placement in a transitional release program under Iowa Code section 229A.8A(2). Matlock remained in the transitional release program, albeit with some setbacks in progress, until 2013.

At Matlock's 2013 annual review hearing, the State was required to prove Matlock's "mental abnormality remains such that [he] is likely to engage in predatory acts that constitute sexually violent offenses if discharged." *Id.* § 229A.8(6)(*d*)(1). Although the testimony established Matlock still exhibits minimal signs of a mental abnormality, the State was unable to prove that Matlock is likely to engage in predatory acts that constitute sexually violent offenses if discharged. *Id.* Thus, the district court granted Matlock's motion for directed verdict orally on the record on the basis the State could not prove Matlock would be likely to reoffend. On October 2, the district court confirmed its ruling on the motion for directed verdict in a written order.

In October, when the district court granted Matlock's motion for a directed verdict, it ordered Matlock "should be discharged from the program, but it is in the best interest of the community to order release with or without supervision before [he] is discharged." The district court reached this decision, in part, because of the testimony of Tracy Thomas, the clinical director at CCUSO. The district court found Matlock "has a history of sexually violent crimes and would, like many other offenders, have trouble reintegrating into the community if he goes from a significant level of supervision and structure to no supervision or structure whatsoever." The district court then ordered the Iowa

Department of Human Services (DHS) to prepare a release plan for Matlock, addressing his needs for counseling, medication, community support services, residential services, vocational services, alcohol or other drug abuse treatment, sex offender treatment, or any other necessary treatment or supervision.

In November, Matlock had a second hearing to determine if his release would be with or without supervision. Prior to the November hearing, DHS submitted a twelve-page release plan to the district court, which contained sixty-six primary conditions to his release, many of which had additional conditions. The release plan also turned jurisdiction of the supervision over to the First Judicial District of Iowa, Community Based Corrections, specifically Mike Shreck of the Iowa Department of Correctional Services (DOC). The district court accepted the recommended conditions of the release plan with the exception that the court would hold a review of Matlock's need for supervision every six months rather than the recommended year because of the significant liberty interest involved.

At both hearings, Matlock argued Iowa Code section 229A.9A was unconstitutional. Matlock asserted that once the court found he no longer suffered from a mental abnormality that made him likely to engage in acts of sexual violence, release with supervision violated his due process rights. Following the November order, Matlock filed a notice of appeal.

## II. Jurisdiction.

Before we reach the merits of Matlock's appeal, we must determine if our court has jurisdiction over this matter. The State alleges the appeal is untimely because Matlock did not file an appeal within thirty days following the October 2 order; and therefore, we do not have

jurisdiction over the appeal. *See* Iowa R. App. P. 6.101(1)(*b*). Matlock filed his notice of appeal on December 18, within thirty days after the district court ordered Matlock released from CCUSO with supervision.

In the October 2 order, the district court ordered Matlock "be discharged from the program" but then determined "it is in the best interest of the community to order release with or without supervision before [Matlock] is discharged." The district court directed DHS to prepare a release plan within thirty days.[1] In this order, the district court also overruled Matlock's argument that Iowa Code section 229A.9A is unconstitutional.

After DHS prepared the release plan, the district court held a second hearing on November 7. At the November 7 hearing, Matlock renewed his constitutional objections to supervision because he was no longer a sexually violent predator as defined by the Code. Following the hearing, the district court entered a written order on November 18, ordering the release of Matlock with supervision and ordering him to follow the conditions of the release plan prepared by DHS.

We do not consider a ruling final if the district court intends to act further on the case before entering its final decision of the issues. *See River Excursions, Inc. v. City of Davenport*, 359 N.W.2d 475, 477 (Iowa 1984). Here, the district court explicitly recognized its ruling on Matlock's liberty restrictions would not be final until it ruled on the terms of supervision, if any. An appeal from the October 2 order would have been premature. Accordingly, the district court entered the final order in this case on November 18, and the appeal was timely.

---

[1]The legislature amended Iowa Code section 229A.9A(2) in 2014 to extend the time DHS has to prepare the release plan from thirty to sixty days. *See* 2014 Iowa Acts ch. 1059, § 2 (codified at Iowa Code § 229A.9A(2) (2015)).

### III.  Issue.

The only issue we must decide on this appeal is whether Matlock's release with supervision violates the substantive Due Process Clauses of the Iowa or the United States Constitutions.

### IV.  Scope of Review.

We review constitutional challenges de novo.  *See In re Det. of Garren*, 620 N.W.2d 275, 278 (Iowa 2000).

### V.  Relevant Statutory Overview of Chapter 229A.

The purpose of chapter 229A is to provide long-term care and treatment of sexually violent predators.  Iowa Code § 229A.1.  The Code defines a "sexually violent predator" as

> a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

*Id.* § 229A.2(11).

The Code states a "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others."  *Id.* § 229A.2(5).  The Code provides a person

> "*likely to engage in predatory acts of sexual violence*" means that the person more likely than not will engage in acts of a sexually violent nature.  If a person is not confined at the time that a petition is filed, a person is "*likely to engage in predatory acts of sexual violence*" only if the person commits a recent overt act.

*Id.* § 229A.2(4).

To be committed to CCUSO, a judge or jury must determine beyond a reasonable doubt that the person is a sexually violent predator.

*Id.* § 229A.7(5). While at CCUSO, there is a rebuttable presumption the civil commitment should continue. *Id.* § 229A.8(1). The committed person is entitled to an annual examination. *Id.* § 229A.8(2). The report of the examination is forwarded to the district court to conduct an annual review. *Id.* § 229A.8(3). The committed person may petition the court for discharge at the time of the annual review. *Id.* § 229A.8(4). To receive a hearing,

> [t]he burden is on the committed person to prove by a preponderance of the evidence that there is relevant and reliable evidence to rebut the presumption of continued commitment, which would lead a reasonable person to believe a final hearing should be held to determine either of the following:
>
> (a) The mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged.
>
> (b) The committed person is suitable for placement in a transitional release program pursuant to section 229A.8A.

*Id.* § 229A.8(5)(*e*)(1).

If the committed person can meet this burden, the court then sets the matter for a final hearing. *Id.* § 229A.8(5)(*e*)(2). At the final hearing, the State must prove beyond a reasonable doubt "[t]he committed person's mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged." *Id.* § 229A.8(6)(*d*)(1).

If the State fails to meet its burden,

> the court may order the committed person released with or without supervision if . . . [t]he court or jury has determined that the person should be discharged from the program, but the court has determined it is in the best interest of the community to order release with or without supervision before the committed person is discharged.

*Id.* § 229A.9A(1)(*b*).

If the committed person's release is with or without supervision, DHS shall prepare a release plan. *Id.* § 229A.9A(2). The court must then hold a hearing on the release plan. *Id.* § 229A.9A(3). If the court approves the plan and orders release with supervision, an agency familiar with the placement of criminal offenders in the community provides the supervision. *Id.* § 229A.9A(4). "A committed person released with or without supervision is not considered discharged from civil commitment under this chapter." *Id.* § 229A.9A(6).

**VI. Due Process.**

**A. Substantive Due Process Generally.** Matlock claims the district court order imposing release with supervision violates the Due Process Clauses of the Iowa and the United States Constitutions. The Due Process Clause of the United States Constitution bars a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Our Iowa Constitution provides "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. We have "traditionally considered the federal and state due process provisions to be equal in scope, import, and purpose." *Garren*, 620 N.W.2d at 284.

As with all of Iowa's constitutional provisions, we reserve the right to construe our Iowa Constitution differently from the United States Constitution, even though the two constitutions contain nearly identical language and appear to have the same scope, import, and purpose. *State v. Kooima*, 833 N.W.2d 202, 206 (Iowa 2013).

Although Matlock set forth these principles in his brief, he does not offer or suggest a framework under the Iowa Constitution different from that under the United States Constitution. Therefore, we apply the

general federal framework in analyzing the issue, but reserve the right to apply the framework in a fashion different from federal caselaw. *See State v. Short*, 851 N.W.2d 474, 491 (Iowa 2014).

The first determination we must make is whether the procedures under chapter 229A, the Sexually Violent Predator Act, are civil in nature, thus, not triggering the constitutional protections given criminal defendants. *Garren*, 620 N.W.2d at 278; *see also* Iowa Code § 229A.16. We previously decided this issue and found chapter 229A did not involve retribution or deterrence, two primary purposes of criminal punishment. *See Garren*, 620 N.W.2d at 279–83 (analyzing Iowa Code chapter 229A in light of *Kansas v. Hendricks*, 521 U.S. 346, 361–69, 117 S. Ct. 2072, 2081–85, 138 L. Ed. 2d 501, 515–19 (1997), which addressed the same question in regards to the Kansas Sexually Violent Predator Act). Accordingly, the Sexually Violent Predator Act is not criminal in nature, but rather civil. *Id.* at 283.

Substantive due process prohibits the State from engaging in arbitrary or wrongful acts " 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100, 113 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662, 668 (1986)). At the core of the liberty protected by the Due Process Clause is a person's interest to be free from bodily restraint by arbitrary government actions. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785, 118 L. Ed. 2d 437, 448 (1992). However, this liberty interest is not absolute. *Garren*, 620 N.W.2d at 284.

The Supreme Court has noted that in certain narrow circumstances states have "provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a

danger to the public health and safety." *Hendricks*, 521 U.S. at 357, 117 S. Ct. at 2079, 138 L. Ed. 2d at 512. Concerning due process challenges regarding civil commitments the Supreme Court has stated:

> The precommitment requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.

*Id.* at 358, 117 S. Ct. at 2080, 138 L. Ed. 2d at 513. Thus, to determine if the State has violated a substantive right, we must weigh the person's liberty interest against the State's asserted reason for restraining that person's liberty. *Youngberg v. Romeo*, 457 U.S. 307, 320–21, 102 S. Ct. 2452, 2460–61, 73 L. Ed. 2d 28, 40 (1982).

**B. Analysis.** Matlock argues "[t]he district court order imposing release with services prior to discharging Matlock from civil commitment after a finding that he no longer suffers from a mental abnormality violates [his] right to due process." Factually, Matlock's claim is incorrect. The district court did not find that he no longer suffered from a mental abnormality. Rather, the district court found the State proved beyond a reasonable doubt that Matlock suffered from a mental abnormality, but it failed to prove he is likely to engage in predatory acts that constitute sexually violent offenses if discharged. We need to consider this distinction.

We have addressed a similar due process challenge in the not-guilty-by-reason-of-insanity cases where the committed person still suffers from a mental illness, but no longer presents a danger to himself or others. *See State v. Huss*, 666 N.W.2d 152, 155, 160–63 (Iowa 2003); *State v. Stark*, 550 N.W.2d 467, 468–70 (Iowa 1996). In *Stark*, we established that a person's substantive due process rights are not

violated if a district court releases a person committed to an institution with conditions—because she was found not guilty by reason of insanity—as long as she continues to suffer from a mental illness and she is not a danger to herself or others with these conditions. 550 N.W.2d at 468–70. The conditions in *Stark* we found not to violate her due process rights were established by the chief medical officer and required Stark to "live in a proper environment [so it] could be assured that a prescribed medication, Haldol, would be administered to her in strict compliance with a physician's directions." *Id.* at 468. The medical officer further opined with these conditions, she would not be a danger to herself or others. *Id.*

In another not-guilty-by-reason-of-insanity commitment, we found that after a long confinement the person committed was still mentally ill, although his illness may have been in remission. *Huss*, 666 N.W.2d at 160. In applying a due process standard, we noted that confining a harmless mentally ill person is a violation of that person's due process rights. *Id.* at 162. Because Huss did not meet the criteria of a dangerous person under the commitment statute—a danger to himself or others—and there was no showing of any needed outpatient supervision, we discharged Huss from his commitment. *Id.* at 161–64. We noted that continued confinement in these circumstances becomes a surrogate for punishment and violates a person's due process rights. *Id.* at 161.

Mentally ill persons, whether committed under the Sexually Violent Predator Act or committed because they were found not guilty by reason of insanity, have the same due process rights. In the case of persons committed because they were found not guilty by reason of insanity, the person must be released from commitment if he or she still suffers from a mental illness but does not meet the criteria of a dangerous person.

*See id.* at 159–60. Additionally, if there is testimony that after release the person needs some type of supervision to reenter society, that supervision does not violate the person's due process rights. *See Stark,* 550 N.W.2d at 468–70.

In the case of a person committed under the Sexually Violent Predator Act, if a person still suffers from a mental abnormality, but the State cannot prove he or she is likely to engage in acts of sexual violence upon release, the courts must release that person. Otherwise, continued confinement violates that person's due process rights under the Iowa and the United States Constitutions and becomes a surrogate for punishment. *See Foucha,* 504 U.S. at 77, 112 S. Ct. at 1784, 118 L. Ed. 2d at 446. If the court finds the State proved release with supervision would help a person safely reenter society, the court may impose such conditions and not violate the person's due process rights under the Iowa and the United States Constitutions. *See Stark,* 550 N.W.2d at 468–70.

Matlock objected to the conditions of his release. At the hearing regarding the terms of release, Matlock's attorney stated:

> [T]he plan that's contemplated could be violated by any numerous violations having nothing to do with sexual reoffending and being placed back into the facility simply known as CCUSO. For those reasons, *any* release with supervision plan is a violation of his due process.

(Emphasis added.) At the same hearing, the State's position was that "the release with supervision plan [was] designed as a clinically appropriate tool to integrate him back into the community so that he could be successful."

When cross-examining Shreck, Matlock questioned various conditions of the release-with-supervision plan. Among other things, Matlock raised the issue that the plan of supervision is similar to a plan

given to a person on probation or parole. Shreck stated on cross-examination the DOC had never supervised a person released with supervision from CCUSO, only sex offenders released from prison or put on probation, and Matlock would have the same conditions as a person released from prison or placed on probation. At the end of the hearing, Matlock was concerned about the cost, his loss of liberty under the plan, the fact that he was to report to a parole or probation officer, and the DOC requiring him to undergo the same treatment as convicted sex offenders after he just received thirteen years of treatment at CCUSO. Although not artfully made, the gist of Matlock's objection was that his release with supervision was nothing more than the court putting him on probation or parole with the DOC. He made his point by showing that the costs a parolee or probationer must pay to be on parole or probation are the same costs he was required to pay.

The conditions imposed by a court are also subject to a due process analysis as they implicate the liberty interest of the individual who the State is supervising. As we noted in a prior case

> [D]ecisions in the realm of mental commitment rest not only on medical judgments but on societal judgments about a community's tolerance for the sometimes deviant behavior of mentally ill persons. It is not only the customary procedure, but the constitutionally and statutorily mandated requirement, to treat even seriously mentally impaired persons in the least restrictive environment medically possible.

*Leonard v. State*, 491 N.W.2d 508, 512 (Iowa 1992) (citation omitted). The Sexually Violent Predator Act appears to recognize these principles when a person suffers from a mental abnormality but the State cannot prove the person is likely to reoffend. *See* Iowa Code § 229A.9A(1)(*b*) (recognizing implicitly that it may be in the best interest of the

community to release a sexually violent predator from CCUSO with or without supervision, rather than discharging that individual).

Finally, we agree with the New Jersey Supreme Court when it noted, in regards to a person committed because they were found not guilty by reason of insanity, that

> [t]he basis for his confinement is rehabilitation and treatment. Any standards for release must be based on this nature of commitment, given the overriding concern for the public safety. Any consideration of punishment has no place in a proceeding on the question of conditional release. There has been no criminal act to punish. . . . There is no criminal to incarcerate. There is, however, a patient to be treated.

*State v. Carter*, 316 A.2d 449, 459 (N.J. 1974), *overruled on other grounds by State v. Krol*, 344 A.2d 289, 305 (N.J. 1975). Again, these principles are equally applicable to persons committed under the Sexually Violent Predator Act.

If the terms of release with supervision are a surrogate for punishment, the court cannot constitutionally impose such terms. *See Scheidt v. Meredith*, 307 F. Supp. 63, 66 (D. Colo. 1970) ("The interests of the community and the individual are relevant to the granting of a conditional release. . . . [T]erms which were designed to regulate the activities of convicted criminals, and which are punitive in nature, cannot be imposed in a case such as this."). Courts have held the release of a mentally ill person with conditions similar to criminal probation violate due process. *See, e.g., id.*

By enacting sections 229A.8 and 229A.9A, the legislature allows a court to release a sexually violent predator with or without supervision after it determines what is in the best interest of the community. Iowa Code § 229A.9A(1)(*b*). If the court properly balances the interest of the community against the liberty interest of the person suffering from a

mental abnormality who is not likely to engage in acts of sexual violence upon release, the statutory scheme does not violate Matlock's rights under the State or Federal Due Process Clauses. Thus, on their face, sections 229A.8 and 229A.9A pass constitutional muster under the Iowa and the United States Constitutions.

The only issue that troubles us is the extent of the supervision ordered by the court. The court ordered the DOC to supervise Matlock's release. The statute authorizes the DOC to supervise the release. *See id.* § 229A.9A(4). However, the terms of the plan are similar to terms of a person released on parole or probation. The terms are also inconsistent with the testimony of the clinical director of CCUSO at trial.

The director's testimony at trial touched on the type of supervision Matlock would need to integrate successfully back into society. She testified as follows:

> My opinion would be that he would definitely need mental health followup, so general mental health, looking at some of the neurological issues, working with him tending to be distorted at times or kind of be tangential or a little disconnected from reality. I think he would also need to be working with somebody who is familiar with offenders, because it's going to be a new environment that presents new challenges, risk factors, so we would want somebody who would work with him on that. I also think he would benefit from some kind of residential placement for a period so that he would continue to have some structure, get used to being in a new environment before he started moving down to more independence.

Courts must balance the liberty interest of the individual with the interest of the community on a case-by-case basis. Conditions that are necessary for the treatment of some individuals may not be for others and therefore, would be punitive. *See, e.g., Campbell v. Dist. Ct.*, 577 P.2d 1096, 1098 (Colo. 1978) (en banc). In *Campbell*, the lower court

imposed seven release conditions upon the individual, including a restriction on his right to possess firearms. *Id.* The test used in *Campbell* to review the restrictions requires "that each condition bears a substantial relation to the petitioner and is tailored to serve the best interests of both the petitioner and the community in which he will be released." *Id.*

The court applied this test and found each condition bore a substantial relation to the interests of the individual and the community. *Id.* The court recognized parole boards commonly impose upon criminals a restriction on possessing firearms, but found the restriction was necessary for Campbell because it "directly related to the abnormal and highly dangerous behavior which resulted in the petitioner's initial commitment." *Id.* Notably, the court acknowledged restrictions the lower court did not impose, but would have gone too far in Campbell's situation, are restrictions on his freedom of association, travelling, and prohibitions on the use of drugs and alcohol. *Id.*

Another state has engaged in this situational analysis, finding some restrictions proper and others improper. An Indiana court stated, "out-patient commitment must be reasonably designed to protect the individual as well as the general public." *Golub v. Giles*, 814 N.E.2d 1034, 1041 (Ind. Ct. App. 2004). In applying this standard, the court found a release condition prohibiting the consumption of alcohol and drugs was improper as it bore no relationship to the individual's treatment or protection of the public. *Id.* 1041–42; *see also Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 99 (Ind. Ct. App. 2005) (reaching the same conclusion).

We have addressed an analogous situation when assessing whether a condition of probation was proper. *Cf. State v. Valin,* 724

N.W.2d 440, 447 (Iowa 2006). There, the defendant objected to the requirement that he undergo sex offender treatment as a condition of probation from a conviction for operating while intoxicated. *Id.* at 442. We struck down this provision by finding the DOC failed "to establish the necessary relationship between the conditions of probation in this case and either the current needs of rehabilitation of the defendant or the current protection of the public from the defendant." *Id.* at 447–48.

Due process requires the court to properly balance the interest of the community against the liberty interest of a person suffering from a mental abnormality who is not likely to engage in acts of sexual violence upon release. *See Stark*, 550 N.W.2d at 468–70. To do this, the district court must strike the proper balance between the treatment needs of a person released with supervision and the protection of the public.

DHS had an obligation under the Code to prepare a report to the court addressing Matlock's needs when released with supervision. Iowa Code § 229A.9A(2). As such, the State has the burden to prove the release-with-supervision plan upholds Matlock's due process rights. The testimony at the hearing concerning the release-with-supervision plan did not explain how the proffered plan accomplished this balance. Moreover, the court failed to include in its order whether the State proved the release-with-supervision plan accomplished this balance, which is a necessary step for the court when adopting a release-with-supervision plan.

Our review of Matlock's release-with-supervision plan leads us to find the plan is more consistent with a person just paroled from prison or on probation, not a person released from a civil commitment. An example of this is the requirement Matlock sign the "First Judicial District Department of Correctional Services Probation Agreement"

normally signed by convicted criminals, and abide by its term on release. Without supporting testimony, many of the conditions in the agreement appear to bear no relationship to Matlock's treatment or the protection of the public.

The testimony at the hearing focused on the treatment aspects of the plan. The DOC acknowledged it has never supervised a person released with supervision from CCUSO and it is supervising Matlock as it would any other sex offender released from prison.

Matlock is not a person released from prison. Rather he is an individual who the court released from a civil commitment with supervision. We understand this release does not mean he is not a threat to the community. As we have previously stated when dealing with a person found not guilty by reason of insanity: "The nagging factual question is 'Will he do it again?' But because we are judges, not oracles, we are obliged to fix our focus on the statutory and constitutional criteria guiding commitment decisions." *Huss*, 666 N.W.2d at 163. Therefore, the district court must make sure the release-with-supervision plan balances Matlock's liberty interest against the interest of the community.

Accordingly, it is necessary to remand the case back to the district court to review the release-with-supervision plan to ensure it is not punitive in nature. The court should not rubber stamp the plan presented by DHS, nor is it required to set the least restrictive conditions of supervision. Rather, it needs to exercise its independent judgment to ensure the plan comports with due process by balancing the liberty rights of Matlock against the interest of the community.

This means each condition must bear a substantial relation to the interests of the individual and the community. The court should remember the goal of the Sexually Violent Predator Act is to provide long-term care and treatment of sexually violent predators, not punishment.

Iowa Code § 229A.1. The court should tailor any provisions of the release-with-supervision plan to balance this goal against the interest of the community.

On remand, the court should hold an evidentiary hearing on the plan put forth by the State. Both sides should have the opportunity to present evidence on which conditions should apply to Matlock. Without such a hearing, we are unable to review the plan as entered to see if it satisfies the Due Process Clauses of the Iowa and the United States Constitutions. In approving a plan with supervision, the court needs to find the plan as adopted complies with Matlock's due process rights.

**VII. Conclusion and Disposition.**

We find the statutory scheme found in sections 229A.8 and 229A.9A does not violate the Due Process Clauses of the Iowa or the United States Constitutions so long as Matlock continues to suffer from a mental abnormality and the testimony supports the need for supervision upon release. We do have a concern about the constitutionality of the release conditions the district court imposed on Matlock because the record is insufficient for us to determine if the State has proven the plan comports with Matlock's due process rights. Consequently, we affirm that part of the district court judgment releasing Matlock with supervision. However, we remand the case back to the district court to determine if the State proved the terms of supervision are consistent with the principles of due process under the Iowa and the United States Constitutions.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Zager, J., who concurs in part and dissents in part.

**ZAGER, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. I agree with the majority that it does not violate due process to order release with supervision, pursuant to Iowa Code section 229A.9A, of a person previously civilly committed as a sexually violent predator. This, even after a finding the person is no longer more likely than not to engage in further predatory acts. I disagree, however, with the majority's decision to further address the constitutionality of the specific release conditions ordered by the district court because that issue is not properly before this court. Consequently, I would not remand the case to the district court but would affirm the judgment of the district court in its entirety.

The only issue raised on appeal is whether the release-with-supervision provision found in Iowa's Sexually Violent Predator Act is facially invalid under the Due Process Clauses of the Iowa and the United States Constitutions. *See* Iowa Code § 229A.9A (2013); *State v. Hernandez-Lopez*, 639 N.W.2d 226, 235 (Iowa 2002) (distinguishing between facial and as-applied constitutional challenges for purposes of mootness). In his brief, Matlock asserts, "The district court order imposing a period of release with services after a finding that Matlock no longer suffers a mental abnormality violates his right to due process." The brief makes only a passing objection to the breadth of the specific terms of supervision imposed by the district court. However, in context it is clear Matlock intends this reference to demonstrate that imposing *any* such restrictions constitutes a significant deprivation of liberty. Matlock makes no argument that the breadth of the release conditions somehow violates due process. Correspondingly, he offers this court no guidance as to the parameters of release that would satisfy due process. *State v.*

*Iowa Dist. Ct.*, 828 N.W.2d 607, 619 (Iowa 2013) (Appel, J., dissenting) (recognizing that lack of briefing and argumentation can lead to problems in the development of the law and noting that "[o]ur precedents require us to defer to another day the other issues that the litigants have not brought to us"). The sole remedy he requests is that we find Iowa Code section 229A.9A unconstitutional and remand this case to the district court to order *complete discharge*; he does not request that we remand this case to the district court to determine what terms of supervision are appropriate or meet due process. On its own, the majority now fashions a protocol that it believes the district court should consider in tailoring an *appropriate* release plan. The majority undertakes this task without the parties requesting that it do so and without the benefit of any briefing or argument by the parties. *See State v. McKinley*, 860 N.W.2d 874, 884 n.6 (Iowa 2015) (declining to address nondispositive but important issue where parties agreed case could be resolved on other grounds and noting it was appropriate to defer resolution of the issue until such time "we [are] confront[ed] [by] a case in which it might be dispositive").

Additionally, the issue of whether the specific release conditions imposed by the district court in this case violate due process has not been properly preserved for our review. " 'It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.' " *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). Our error preservation rules apply with equal force to constitutional issues. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."); *Hernandez-Lopez*, 639 N.W.2d at 233

(noting that error preservation rules apply to constitutional issues); *Garwick v. Iowa Dep't of Transp.*, 611 N.W.2d 286, 288 (Iowa 2000) (" 'Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal.' " (quoting *State v. McCright,* 569 N.W.2d 605, 607 (Iowa 1997))).

Our error preservation rules serve important purposes.  As we have previously explained,

> [B]ased upon considerations of fairness, . . . this court is not ordinarily a clearinghouse for claims which were not raised in the district court[.]  [I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.  Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*Bill Grunder's Sons Constr., Inc. v. Ganzer,* 686 N.W.2d 193, 197 (Iowa 2004) (alterations in original) (internal quotation marks omitted)).  In addition to fairness considerations, these rules also serve functions of judicial economy by "avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

In the proceedings before the district court, and as framed in this appeal, Matlock's lone argument was that imposing release with services after a finding that he no longer suffers from a mental abnormality violates due process.  Specifically, at the annual review hearing in October Matlock's counsel argued:

> [I]f the Court decides he's discharged, then the Court, under 229A.9A can order release with or without supervision.  I believe . . . that statute is unconstitutional.
>
>     . . . .

The only way Mr. Matlock has been held against his will for 11 years is because of that mental abnormality . . . . [It] has now been found that he no longer has a mental abnormality. It is now unconstitutional to . . . deprive him of freedom because of 229A, . . . saying that 229A.9A(1)(*b*) says the Court or jury has determined that the person should be discharged from the program but the Court has determined that it is in the best interests of the community to order release with or without supervision before the committed person is discharged.

The district court overruled Matlock's constitutional objection by oral ruling on the record, which it later confirmed in its written ruling.

At the subsequent hearing in November, at which the specific conditions of release were addressed, Matlock reasserted this same argument:

Again, we object to the statute that allows the Court to impose a release with supervision if the Court finds it is in the best interests of the community. . . .

. . . We have determined in this proceeding that Mr. Matlock no longer suffers from a mental abnormality. . . . I think everyone would agree that we cannot initially commit anyone on the basis of for the best interests of the community. That would be a violation of due process.

In the same respect, we cannot now retain a release with supervision plan on him on just that basis alone: It's a violation of due process. . . . [T]he plan that's contemplated could be violated by any numerous violations having nothing to do with sexual reoffending and being placed back into the facility simply known as CCUSO. For those reasons, *any* release with supervision plan is a violation of his due process.

(Emphasis added.) At this hearing, Matlock only objected to the imposition of $800 in treatment and supervision fees and to the timing of the review of his supervision. Specifically, Matlock argued he should be reviewed in six as opposed to twelve months. Significantly, Matlock did not assert, or even intimate, that any conditions of his release violated due process. After hearing, the district court again overruled Matlock's constitutional objection in its November 18 order, noting: "Respondent's

counsel renewed their constitutional objections to *any* level of supervision. The Court took the objections under advisement but now overrules those objections." (Emphasis added.)

The record shows that in the district court proceedings Matlock never argued that any of the proposed release conditions violated due process, the district court did not pass on the constitutionality of the specific release conditions, and Matlock did not file a motion requesting a ruling in order to preserve error for appeal. Rather, Matlock's lone argument was that the imposition of *any* conditions of release violates due process. There was no argument as to which provisions of the proposed release plan violated due process. Counsel's summary of Matlock's argument at the underlying hearing—the same argument he makes on appeal in both his brief and at oral argument—clearly shows that Matlock challenged the imposition of *any* release with supervision plan, categorically. This is clearly how the district court understood his argument: "Respondent's counsel renewed their constitutional objections to *any* level of supervision." (Emphasis added.) Matlock has waived the issue on appeal.

I recognize that we have an obligation to construe the law in resolving legal issues presented on appeal independent of any construction advocated by the parties. But our obligation to do so exists within the confines of the issues raised by the parties. *See Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010) ("Our obligation on appeal is to decide the case within the framework of the issues raised by the parties."). "[I]n the absence of the most cogent circumstances, we do not create issues . . . ." *Id.* at 78 n.4 (collecting cases). True, we have previously recognized that we will address issues that are "incident to" a determination of other issues properly presented. *See Messina v. Iowa*

*Dep't of Job Serv.*, 341 N.W.2d 52, 58, 61 (Iowa 1983) (addressing issue of whether plaintiff had contractually waived his First Amendment rights when defendant had not raised that issue before the district court and holding "the waiver issue may be determined as an incident to the expressed issue"); *Presbytery of Se. Iowa v. Harris*, 226 N.W.2d 232, 234 (Iowa 1975); *see also State v. Lyle*, 854 N.W.2d 378, 382–83 (Iowa 2014) (recognizing that categorical constitutional challenge was "fundamentally similar" to as-applied constitutional challenge initially raised on appeal). However, this exception to our error preservation rules is rarely invoked and ill developed. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 50 (2006) ("It is not, however, entirely clear what 'incident to a determination of other issues properly presented' actually means." (Footnote omitted.) (quoting *Harris*, 226 N.W.2d at 234)). *Compare Feld*, 790 N.W.2d at 78 n.4 (declining to address issue not presented by the parties), *with Feld*, 790 N.W.2d at 84 (Appel, J., dissenting) (concluding issue not presented by the parties was "incident to" a determination of properly presented issues because they were inherently intertwined). In my opinion, the issue of whether any of the specific release conditions imposed in this case violated due process is not incident to the issue of whether the imposition of release with restrictions under the statute is constitutional. We should leave this determination for another day.

The issue has *never* been framed as a challenge to any specific restrictions in the release plan. The parties never requested that we formulate a test for determining when specific conditions of release would satisfy due process, or provide the district court with guidance as to what release conditions would do so. And it is in no way necessary

that we resolve this issue in order to address the issue that is properly presented in this case. Thus, we should follow our typical practice of moving the law forward incrementally and wait for a case that requires us to craft a test for determining when specific conditions of release violate due process. *See State v. Pearson*, 836 N.W.2d 88, 99 (Iowa 2013) (Cady, C.J., concurring specially) (recognizing value of moving the law forward on an incremental basis). Preferably, a case in which the parties ask us to do so and actually brief the issue. *See State v. Hoeck*, 843 N.W.2d 67, 71 (Iowa 2014) (recognizing value of having a fully developed record and full briefing before addressing an issue, and noting "it would be a disservice to [the defendant], the State, and our system of justice to decide these claims without a thorough vetting of the claims in the district court"); *cf. Lyle*, 854 N.W.2d at 383 ("*The supplemental briefing we ordered*, combined with the categorical nature of the relief [sought] also obviates *in this narrow circumstance* the need for more thorough briefing in the district court." (Emphasis added.)). Instead, the majority today simply identifies an issue it finds problematic, but not raised or briefed by the parties, and weaves a new legal test out of whole cloth.

We should reserve this question for a future case where the parties actually brief and argue it and where error is properly preserved. The question of whether any of the specific release provisions imposed in this case violate due process is not so closely intertwined with the question of whether imposing *any* release conditions does so, categorically. We should not sua sponte attempt to formulate guidelines and parameters without full briefing and arguments of the parties and other interested individuals. After today, without any input from the parties, the ill-defined "balancing test" to be utilized by the district court is settled. Because this issue was not raised as part of this appeal, raised before

the district court, decided by the district court, and is not an issue we must necessarily resolve in order to address the issue properly raised in this appeal, we should not deviate from our normal process of waiting for a case where an issue is properly presented. I would not decide it here. Remand to the district court is unnecessary.