WIGGINS, Justice
(dissenting).
I disagree with the majority’s conclusion that under the findings made by the district court it had-the statutory or constitutional authority to place Jeffrey Anderson in the transitional release program under Iowa Code chapter 229A (2016).
I. Absence of Statutory Authority.
Chapter 229A contains the Code provisions concerning civil commitment of sexually violent predators. The legislature included the transitional release program as part of its civil commitment of sexually violent predators. Iowa Code § 229A.8A. Transitional release is the last phase of treatment for persons committed to the civil commitment unit for sexual offenders (CCUSO). We have previously found the transitional release program is the fifth phase of treatment while committed at CCUSO. See Swanson v. Civil Commitment Unit for Sex Offenders, 737 N.W.2d 300, 303 (Iowa 2007); see also Iowa Code § 229A.8A (stating the requirements for a person to be moved to transitional release).
Although section 229A.9B(5) authorizes a judge to place a person who violates the terms of his or her release with supervision in the transitional release program, a judge must make specific findings before doing so. The first finding a court must make to place a person in the transitional release program at CCUSO is that “[t]he committed person’s mental abnormality is no longer such that the person is a high risk to reoffend.” Iowa Code § 229A.8A(2)(a). Implicit in this finding is that the person is still likely to reoffend, but at a lower risk than at the time the person was originally committed to CCU-SO. The district court never made that finding in this case.
Once a court makes an initial finding under section 229A.8A(2)(a), the statute requires the court to make the following additional findings in order for a court to commit a person to the transitional release program:
b. The committed person has achieved and demonstrated significant insights into the person’s sex offending cycle.
c. The committed person has accepted responsibility for past behavior and understands the impact sexually violent crimes have upon a victim.
d. A detailed relapse prevention plan has been developed and accepted by the treatment provider which is appropriate for the committed person’s mental abnormality and sex offending history.
e. No major discipline reports have been issued for the committed person for a period of six months.
*151 f. The committed person is not likely to escape or attempt to escape custody pursuant to section 229A.5B.
g. The committed person is not likely to engage in predatory acts constituting sexually violent offenses while in the program.
h. The placement is in the best interest of the committed person.
Id. § 229A.8A(2). In this case, the district court never made these findings before committing Anderson to the transitional release program.
Without these findings for commitment to the transitional release program, the court could order Anderson returned to release with or without supervision. In the alternative, the court could order him to confinement in a secure facility at CCUSO after making the necessary findings to do so. See id. §§ 229A.2, .7, .9B(5).
II. Absence of Constitutional Authority.
In a previous decision, we outlined the requirements of substantive due process when a person’s liberty is at stake. There we said,
Substantive due process prohibits the State from engaging in arbitrary or wrongful acts “ ‘regardless of the fairness of the procedures used to implement them.’ ” At the core of the liberty protected by the Due Process Clause is a person’s interest to be free from bodily restraint by arbitrary government actions. However, this liberty interest is not absolute.
In re Det. of Matlock, 860 N.W.2d 898, 903 (Iowa 2015) (citation omitted) (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). In order to determine whether the State has violated a person’s substantive due process, we must weigh the person’s liberty interest against the State’s asserted reason for restraining that person’s liberty. Id. at 904.
In the case of a commitment of a sexually violent predator to a secure facility like CCUSO, the United States Supreme Court and our court have found the State can confine a sexually violent predator civilly for treatment as long as a person with a mental abnormality finds “it difficult, if not impossible, for the person to control his dangerous behavior.” In re Det. of Garren, 620 N.W.2d 275, 284 (Iowa 2000) (quoting Kansas v. Hendricks, 521 U.S. 346, 358, 117 S.Ct. 2072, 2080, 138 L.Ed.2d 501 (1997)). Our legislature has complied with this standard by defining a sexually violent predator as
a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.
Iowa Code § 229A.2(12).
We have also discussed the substantive due process rights of a person who the court releases from a civil commitment with supervision. See Matlock, 860 N.W.2d at 904-08. A person can be released from a civil commitment as a sexually violent predator if the State cannot show that the committed “person’s mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged.” Iowa Code § 229A.8(6)(d)(l). In this situation, the court can release a person with or without supervision. Id. § 229A.9A. When released, the previously committed person is not under a civil commitment, but only subject to outpatient conditions that “bear a substantial relation to the interests of the individual and the community.” Matlock, 860 N.W.2d at 908.
*152 In this case, the State released Anderson with supervision, and he violated the conditions the court placed on him while released with supervision. We now must determine if the court violated his substantive due process rights when the court recommitted him to CCUSO’s transitional program under chapter 229A of the Code.
The majority uses a Matlock due process analysis to find the district court order returning Anderson to CCUSO’s transitional release program did not violate his due process rights. In Matlock, the court released Matlock with supervision from the transitional release program at CCU-SO because the court found that although he still suffered from a mental abnormality, he was not likely to engage in acts of sexual violence upon release. Id. at 900. The Matlock due process analysis is less stringent than the Hendricks-Garren due process analysis because Matlock was no longer committed to the transitional release program at CCUSO. Rather, the court released him from CCUSO with supervision. In situations where the person is no longer committed to CCUSO, due process only requires us “to properly balance the interest of the community against the liberty interest of a person suffering from a mental abnormality who is not likely to engage in acts of sexual violence upon release.” Id.
On the other hand, due process for persons committed to CCUSO can only be satisfied if
[t]he precommitment requirement of a “mental abnormality” or “personality disorder” is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.
Hendricks, 521 U.S. at 358, 117 S.Ct. at 2080. The flaw in the majority’s reasoning is that it fails to acknowledge sending Anderson to the transitional release program at CCUSO is recommitting him to the CCUSO. The majority is wrong and without any legal authority to support its conclusion that “the district court only substituted one form of conditional release— the transitional release program located at CCUSO—for another form of conditional release—release with supervision.”
Other states faced with this same situation have agreed with my analysis. In New Jersey, before • a court can recommit a person for violating a conditional release, the court must find the person is dangerous because he or she is highly likely to reoffend. In re Civil Commitment of E.D., 183 N.J. 536, 874 A.2d 1075, 1076-77 (2005). The Supreme Judicial Court of Massachusetts reached the same conclusion. Commonwealth v. Travis, 372 Mass. 238, 361 N.E.2d 394, 399 (1977).
The Arizona and Washington appellate court decisions cited by the majority do not support a conclusion that the court need not afford the Hendricks-Garren due process analysis when it recommits a person to CCUSO. The Arizona court of appeals required a finding that before a court could return a person on conditional release to confinement, the state had to prove that the person was dangerous. In re Pima Cty. Mental Health Cause No. A20020026, 237 Ariz. 452, 352 P.3d 921, 924 (App. 2015). In Pima County, the court only held the state could prove dangerousness by a preponderance of evidence, rather than by the higher standard of beyond a reasonable doubt because a conditional release under Arizona law is not a release from the commitment. Id.
The Washington appellate court only dealt with whether the state had to prove a willful violation in order to remove a civilly *153 committed sex offender from a less restrictive alternative to commitment. In re Det. of Wrathall, 156 Wash.App. 1, 232 P.3d 569, 569 (2010). It held the state did not have to prove a willful violation. Id. at 572. Notably, in affirming the offender’s recom-mitment, the court found the offender acknowledged he posed a danger to society. Id.
Thus, the Arizona and Washington appellate court decisions relied upon by the majority address the standard of proof required for recommitment, not the due process analysis required. The majority cites no authority allowing a court to recommit Anderson tó CCUSO’s transitional release program without a Hendñcks-Garren due process analysis. Because the district court did not make the proper Hendñcks-Garren due process findings, I would remand the case to the district court to determine the proper placement of Anderson, requiring the court to give due consideration to the statutory and due process requirements that must be afforded to him.
Hecht and Appel, JJ., join this dissent.