# IN THE COURT OF APPEALS OF IOWA

No. 19-0936
Filed March 18, 2020

**IN THE MATTER OF L.M.,**
**Alleged to Be Seriously Mentally Impaired,**

**L.M.,**
     Respondent-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

L.M. appeals from a district court order finding her seriously mentally impaired and imposing civil commitment. **REVERSED AND REMANDED WITH DIRECTIONS.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

L.M. was homeless and struggling with substance abuse when her mother filed an application for involuntary hospitalization on May 14, 2019. Her father filed a supporting affidavit. Her parents initiated the commitment process under both Iowa Code chapters 229 and 125 (2019). L.M. underwent a preliminary mental-health evaluation and substance-abuse evaluation on May 15. The court appointed an attorney for L.M., and a hearing was held on May 17. The court found by clear and convincing evidence that L.M. suffered from a substance-related disorder and a serious mental impairment. L.M. appealed, challenging the sufficiency of the evidence only as to her chapter 229 commitment. Based on our review of the record, we reverse and remand for dismissal of the mental-health commitment.

**Standard of Review**

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). A district court's findings of facts in civil commitment proceedings have the effect of a special verdict. *State v. Huss*, 666 N.W.2d 152, 159 (Iowa 2003). "In prior decisions involving involuntary commitment we have said the elements of serious mental impairment must be established by clear and convincing evidence and the district court's findings of fact are binding on us if supported by substantial evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998).

"Clear and convincing evidence is evidence that leaves 'no serious or substantial doubt about the correctness of the conclusion drawn from it.'" *In re*

*D.D.*, 653 N.W.2d 359, 361 (Iowa 2002) (quoting *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983)).

In Iowa, an interested person may initiate proceedings "for the involuntary commitment or treatment of a person with a substance-related disorder . . . or for the involuntary hospitalization of a person pursuant to chapter 229 [regarding persons with a serious mental impairment] . . . by filing a verified application with the clerk of the district court." Iowa Code § 125.75(1). The applicant carries a heavy burden of proof in establishing that commitment is necessary. *See id.* §§ 125.82(4), 229.12(3)(a). "[A] presumption in favor of the respondent" exists. *See id.* §§ 125.82(4), 229.12(3)(a). The applicant can overcome the presumption only with clear and convincing evidence "the respondent is a person with a substance-related disorder" or serious mental impairment. *See id.* §§ 125.82(4), 229.12(3)(c).

**Error Preservation and Evidentiary Issues**

The State asserts that several of L.M.'s arguments should be disregarded as unpreserved as they were not developed by trial counsel at the hearing. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). In particular, the State takes issue with L.M.'s arguments on appeal regarding the fact that neither the applicant or affiant testified at the hearing, the State failed to produce a physician, and the evaluation report had internal inconsistencies.

We disagree that these arguments are unpreserved. L.M.'s arguments relate to sufficiency of the evidence, which is properly preserved because L.M. contested and appealed the trial court's finding of serious mental impairment.[1]

**Sufficiency of the Evidence**

A finding that a respondent is seriously mentally impaired within the meaning of Iowa Code section 229.1(20) requires proof of three elements. *J.P.*, 574 N.W.2d at 343. First, the respondent must have a mental illness. *Id.* Second, "because of that illness [the respondent] lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." Iowa Code § 229.1(20); *J.P.*, 574 N.W.2d at 343. The third element is met when because of their mental illness the respondent meets any of the four criteria laid out in paragraphs (a) through (d) of Iowa Code section 229.1(20). The district court in this case found the third element satisfied under paragraph (a): "Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment." Iowa Code § 229.1(20)(a).

**Discussion**

First we consider the requirement that L.M. be suffering from a mental illness to meet the statutory definitions. Dr. Eric Opheim's one-page report on L.M.'s preliminary evaluation indicated in the affirmative by checking "yes" to the

---

[1] The State construes L.M.'s complaint regarding the physician's absence as an alleged violation of Iowa Code section 229.12(3)(b). This is a mischaracterization of L.M.'s argument. The record does not reflect that a licensed physician or mental health professional attended the hearing, nor is there a waiver of the physician's presence. However, L.M. does not assert an argument based on a violation of section 229.12(3)(b).

question as to whether L.M. has a mental illness. Dr. Opheim's preliminary mental evaluation described L.M.'s illness as "Paranoia 2° to Methamphetamine Abuse".

Documentation of L.M.'s mental illnesses lists only disorders tied to drug use. The record shows several diagnoses for substance-abuse-related disorders. On May 15, 2019, Dr. Constance Morrison diagnosed L.M. with "F15,20 AMPTH TYPE SUBSTANCE USE DISORDER SEVERE." Dr. Morrison's report contains no separate diagnosis for mental health. Because there is insufficient evidence in the record to establish that L.M. was suffering from a mental illness, a necessary component for commitment under Iowa Code chapter 229, our analysis could end. However, we touch briefly on elements two and three for future guidance.

L.M. argues the district court's finding that she lacked sufficient judgment to make responsible decisions with respect to her treatment was not supported by clear and convincing evidence. Iowa Code § 229.1(20). We agree. "In determining whether a decision is responsible, the focus must be on whether the grounds for the decision are rational or reasonable not what conclusion is reached." *J.P.*, 574 N.W.2d at 343.

While the initial report following evaluation checked the box indicating that L.M. lacked sufficient judgment, the report did not provide any information supporting the conclusions. This is insufficient. *See* Iowa Ct. Rs. 12.13 (providing the physician's report "shall contain" the "physician's diagnosis and recommendations with a detailed statement of the facts, symptoms and overt acts observed or described to the physician"), 13.13 (providing the physician's report shall contain "a detailed statement of the observations of medical history which led to the diagnosis"); *see also In re S.L.,* Nos. 9–473, 98–628, 1999 WL 975740, at

*2–3 (Iowa Ct. App. Oct. 27, 1999) (reversing commitment where physician's report "provided no facts" supporting conclusion). Lastly, the report that followed the evaluation of L.M. made no recommendations for mental-health treatment, but rather it noted L.M. had "good insight to her drug problem" and recommended inpatient drug treatment, a course L.M. agreed was necessary. That same report recommended no medications or mental-health treatment.

While her parents' application and affidavit alleged L.M. had threatened suicide, the State did not request that those documents be given evidentiary consideration at the hearing. The State did not call either the affiant or applicant to testify. L.M. testified that any past suicidal ideation "was the drugs."

We next consider whether L.M. "is likely to physically injure the person's self or others if allowed to remain at liberty without treatment." On appeal, L.M. argues that the State failed to prove a "recent overt act, attempt or threat."

A deprivation of liberty can be justified only by a showing of dangerousness. The applicant thus must establish by clear and convincing evidence the respondent presents a danger to self or others if allowed to remain at liberty. *See* Iowa Code §§ 125.75(2)(a) (stating the applicant must believe "the respondent is a person who presents a danger to self or others"); 125.81(1) (requiring "probable cause to believe that the respondent . . . is likely to injure the person or other persons if allowed to remain at liberty"); 229.1(20)(a) (defining "serious mental impairment" to include danger to self or others); *see also In re E.J.H.,* 493 N.W.2d 841, 843 (Iowa 1992) (stating there is "no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom"); *B.A.A. v. Chief Med. Officer, Univ. of Iowa Hosps.,* 421 N.W.2d 118,

123–24 (Iowa 1988) ("Thus, the state can no longer commit an individual solely because treatment is in the person's best interest under the parens patriae doctrine. There must also be a likelihood that the individual constitutes a danger to himself or others . . . . In addition, this danger must be evidenced by a recent overt act, attempt, or threat.") (citation and internal marks omitted); *In re D.K.,* No. 14–1403, 2015 WL 3624391, at *2 (Iowa Ct. App. Jun. 10, 2015) (holding chapter 125 "incorporates a dangerousness requirement" as a prerequisite to commitment).

Determining whether a respondent poses a risk of danger "requires a predictive judgment, based on prior manifestations, but nevertheless ultimately grounded on future rather than past danger." *Oseing,* 296 N.W.2d 797, 801 (Iowa 1980) (citation and internal marks omitted). The danger a person poses to self or others must be evidenced by a "recent overt act, attempt or threat." *See J.P.,* 574 N.W.2d at 344. Behavior that is socially unacceptable, standing alone, does not satisfy the overt act requirement. *See In re Mohr,* 383 N.W.2d 539, 542 (Iowa 1986). Rather, an "overt act" implies past aggressive behavior or threats that manifest in the probable commission of a dangerous act upon the respondent self or others. *In re Foster,* 426 N.W.2d 374, 378–79 (Iowa 1988). "Stringent proof under the dangerousness standard is necessary because predicting dangerousness is difficult and, at best, speculative." *Id.* at 377–78.

There is not clear and convincing evidence of a recent, overt act demonstrating L.M. is likely to commit a dangerous act upon herself or others due to a mental illness. At the time of her detention at the hospital, she was reported by the examining physician to be polite and appropriate. It was also reported that

she has some "pretty good insight to her problem." L.M. further related her past suicidal ideation to use of methamphetamine. She reported that she was at the hospital because she had a drug problem, was addicted to methamphetamine, and had used methamphetamine two days prior to the evaluation. She denied current suicidal ideation.

The Iowa Supreme Court in *Foster* held "that an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." 426 N.W.2d at 379. The *Foster* court cited with approval a Montana Supreme Court case that explicitly characterized a threat to take one's own life as an overt act. *Id.*; *see also In re M.C.*, 716 P.2d 203, 207 (Mont. 1986) ("Overt acts includes behavior such as a threat to take one's life . . . .").

Given the Iowa Supreme Court's holding in *Foster*, we conclude the repeated threats of suicide constitute an "overt act"; however, in this case clear and convincing evidence does not show that such acts are recent. While the application and affidavit submitted by L.M.'s parents both stated that L.M. has threatened suicide several times, neither parent testified. No evidence in the record regarding these statements exists other than the statements of L.M., who testified such past statements were related to her drug use. She did not testify to any recent threats.

The notion that L.M. is a danger to herself or others is further undermined by the physician's report dated May 15, 2019. The preliminary evaluation report is checked "danger to herself or others," however, the report provides no facts supporting that conclusion. The report that followed the evaluation indicates L.M.

as "not a danger to self or others." This same report also indicated that L.M. denied suicidal ideation. Given the report's several indications that L.M. was not a danger to herself or others and the fact that no testimony was provided as to a recent suicide threat, we cannot say the State proved by clear and convincing evidence that L.M. is a danger to herself or others.

**Conclusion**

"It is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *State v. Stark*, 550 N.W.2d 467, 469 (Iowa 1996) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). "Where the significant deprivation of a person's liberty is at stake, as here, we think it is more prudent to err on the side of caution." *In re Blaise*, No. 07-0188, 2009 WL 1066767 (Iowa Ct. App. Apr. 22, 2009).

We conclude there is not clear and convincing evidence in this record that L.M. has a mental illness, lacks sufficient judgment for treatment for a mental illness, and poses a probable risk of danger to self or others as evidenced by a recent overt act because of a mental illness. We reverse the district court's involuntary chapter 229 commitment order and remand this case to the district court with directions to terminate L.M.'s mental health commitment.

**REVERSED AND REMANDED WITH DIRECTIONS.**